ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 2 9 2019

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO.   3:18-500-B |
| v. | **(Supersedes Information filed October 4, 2018)** |
| CHRISTOPHER AUNDRE FAULKNER | |

SUPERSEDING INDICTMENT

The Grand Jury Charges:

Introduction

At all times material to this Superseding Indictment:

1.     During the period 2010 through 2016, the defendant, **Christopher Aundre Faulkner,** established and controlled several oil and gas companies through which he sold working and royalty interests in oil and gas prospects to investors throughout the United States.   In connection with the sale of these investments, and for the purpose of enriching himself, the defendant willfully, and with intent to defraud, deceived investors by misrepresenting material facts, and failing to disclose material facts as to the nature of the investments and the use of the investors' funds.   Between 2011 and 2016, the defendant raised over $70 million from investors for working interest programs alone, and millions more for royalty interest programs.   During this same period the defendant diverted approximately $23 million in commingled royalty and working investor funds to his own personal benefit.

**Superseding Indictment - Page 1**

The Defendant's Companies

2.     In September 2009, the defendant formed and jointly owned Breitling Oil and Gas Corporation, ("Breitling") with two other individuals, P.H. and M.M. The defendant was the President and CEO of the Breitling and exclusively controlled and directed the activities and finances of the company.   P.H. and M.M. managed the sales persons and conducted sales themselves.   At all times relevant to this superseding indictment Breitling conducted business in the Northern District of Texas.   From in or about January 2011 through December 2013, Breitling sold to investors working interests in 15 oil and gas prospects in Texas, Oklahoma, and North Dakota.

3.     In 2013, Faulkner transitioned Breitling into a public company through a reverse merger with an existing public company. The reverse merger created Breitling Energy Corporation ("BEC") with the defendant as the chairman of the board.

4.     At the same time of the reverse merger the defendant moved Breitling's marketing functions to a new company named Crude Energy, LLC ("Crude").   Crude was a limited liability company organized by the defendant in Wyoming under the name of Enhanced Funding, LLC.   In 2013 the defendant changed the name of Enhanced Funding to Crude.   P.H. and M.M. were designated as Crude's officers; however, at all times the defendant controlled and directed the operations and finances of Crude.   From in or about December 2013 through June 2015, Crude sold to investors working interests in multiple oil and gas prospects.

5.      In 2015, the defendant discontinued the operations of Crude and shifted the marketing efforts to Patriot Energy, Inc. ("Patriot").    M.M. was named as President; however, at all times the defendant controlled and directed the activities and finances of Patriot.

The Working Interest Programs

6.      The working interest programs marketed by Breitling, Crude, and Patriot included the following:

(a)      The Breitling – Pumpkin Ridge 2 Prospect was an investment program offered and sold by Breitling to investors to acquire "units" each representing a .5% working interest in two wells, to be drilled, tested, and completed by Breitling in Mountrail and Williams County, North Dakota for a fixed price of $410,000 per unit. From in or about September 2012 through September 2013, Breitling raised approximately $7.1 million from investors for the Pumpkin Ridge 2 program.

(b)      The Breitling – Big Horn 2 Prospect was an investment program offered and sold by Breitling to investors to acquire "units" each representing a .5% working interest in two wells, to be drilled, tested, and completed by Breitling in Mountrail and Burke County, North Dakota, for a fixed price of $410,000 per unit.    From in or about December 2012 through December 2013, Breitling raised approximately $5.5 million from investors for the Big Horn 2 program.

(c)      The Breitling – Eagle Eye #1H Prospect was an investment program offered and sold by Breitling to investors to acquire units each representing a .5% working interest

in a well, to be drilled, tested, and completed by Breitling in Mountrail County, North Dakota for a fixed price of $250,000 per unit.   From in or about September 2013 through March 2014, Breitling raised approximately $2.7 million from investors for the Eagle Eye #1H program.

(d)     The Crude – Red Wolf #1 Prospect was an investment program offered and sold by Crude to investors to acquire units each representing a 1% working interest in a well, to be drilled, tested, and completed by Crude in Sterling County, Texas, for a fixed price of $80,000 per unit.   From in or about March 2014 through August 2014, Crude raised approximately $6.1 million from investors for the Red Wolf #1 program.

(e)     The Crude – White Wolf #1 Prospect was an investment program offered and sold by Crude to investors to acquire units each representing a 1% working interest in a well, to be drilled, tested, and completed by Crude in Sterling County, Texas, for a fixed price of $80,000 per unit.   From in or about July 2014 through March 2015, Crude raised approximately $6.8 million from investors for the White Wolf #1 program.

(f)     The Crude – Blue Wolf #1 Prospect was an investment program offered and sold by Crude to investors to acquire units each representing a 1% working interest in a well, to be drilled, tested, and completed by Crude in Sterling County, Texas, for a fixed price of $80,000 per unit.   From in or about November 2014 through June 2015, Crude raised approximately $7.6 million from investors for the Blue Wolf #1 program.

The Offer and Sale of the Working Interest Programs

7.      Breitling, Crude, and Patriot, all offered and sold to investors a "unit" of the working interest in a proposed well.   These units consisted of undivided fractional interests in oil and gas rights and were therefore securities, as that term is defined under the securities laws of the United States.

8.      The price for each unit was based on a proportional share of the estimated costs to drill and complete the well.   The units were offered on what was described as a "turnkey" basis.   Under this turnkey arrangement the investor's investment was fixed, meaning that should the actual costs of drilling the well exceed that estimated, then the company would be responsible for the overage, not the investor.   Alternatively, if the cost of drilling and completion was below what was estimated and raised from the investors, then the company could retain these excess funds.   This excess funds provision of the turnkey arrangement was central to the defendant's scheme to defraud as described herein.

9.      The estimated costs to drill and complete the well was provided to the investors in the form an itemized list of the expected costs known as an Authority for Expenditure ("AFE").   An AFE is generally prepared by the well operator who has the requisite knowledge and experience to estimate the costs.   AFEs were included in the offering materials provided to the investors.

10.      The defendant was primarily responsible for the preparation of the offering documents.   The offering materials consisted of a color marketing brochure that described the prospective well, a Confidential Information Memorandum ("CIM") that described the

terms of the offering, and a Subscription agreement.   The offering documents were delivered to prospective investors through means of interstate commerce, including United States mail and by interstate commercial carrier.   If a prospective investor agreed to purchase the unit the investor would return the subscription agreement and a check to the defendant's company by an interstate commerce carrier or mail.   Investors would also transmit payment by wire transfer to the defendant's companies' bank accounts located in Dallas, Texas.

11.     The offering materials also represented that investor funds would be deposited into a segregated bank account and that all costs for the drilling and completion of the well would be paid from that account.

12.     Investors were led to believe that the defendant's companies would only receive compensation after a well was successfully drilled.   According to the CIM, this would occur in two ways: (1) in the event the actual costs of the drilling and completion were less than the estimated costs, then the excess funds received by the company from investors could be retained by the company, and (2) if the proceeds from the well production were sufficient that each investor received one hundred per cent return of their investment, then company would begin to receive a percentage of the production revenue. This second method of compensation was known as "back in after payout" or "BIAP."

13.     The color brochure described the prospect and provided a Geology Report prepared by Joe Simo of Simo Energy LLC, who was represented to be an independent geologist.   Mr. Simo often provided in his Geology Report an estimate of the future

**Superseding Indictment - Page 6**

production from the well. The color brochure also included a "Monthly Gross Income Conversion Table" which informed the prospective investor of expected monthly income based on the estimated production figures contained in Simo's Geology report. The defendant's sales persons heavily emphasized the income conversion tables to the prospective investors.

14. A critical part of the marketing efforts of his companies was the defendant's own public image. The defendant held himself out to the public as an expert in oil and gas exploration, particularly in the process of fracking. In order to gain the trust and confidence of potential investors he engaged in extensive self-promotion and appeared on several television and radio programs.

The Scheme and Artifice to Defraud

15. Beginning by at least 2011, and continuing through in or about April 2016, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant, knowingly, and with intent to defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money from investors by means of false and fraudulent pretenses, representations and promises and omissions of material fact.

16. It was part of the aforesaid scheme and artifice to defraud that the defendant, aided and abetted by others, knowingly made and caused to be made materially false and fraudulent representations, pretenses, and promises regarding the working interest programs offered and sold by Breitling, Crude, and Patriot, including the following:

(a) That the defendant had extensive past experience working in the petroleum

industry and had earned and obtained degrees from the University of North Texas and Concordia;

    (b)    That the price for a unit of working interest was based on the unit's share of the reasonable and expected estimated costs to drill, test, and complete the well;

    (c)    That the AFE provided to investors in the CIM was prepared by the operator of the well and contained a legitimate estimate of the cost to drill and complete the well;

    (d)    That only a limited number of working interest units in each well prospect would be offered and sold to investors;

    (e)    That investor funds would be safeguarded by being deposited into segregated bank accounts in the name of the particular offering;

    (f)    That investor funds would only be used to pay the cost of drilling, testing, and completing the well that was invested in;

    (g)    That all costs to drill and complete a well, would be paid from the well's segregated bank accounts;

    (h)    That the geology report and estimated production for the wells were prepared by a Geologist who was independent from the defendant's companies; and,

    (i)    That the estimated production for a well was an objective and reasonable estimate.

    17.    It was further part of the aforesaid scheme and artifice to defraud that the defendant, aided and abetted by others, in making representations and causing such representations to be made to investors concerning the working interest programs,

knowingly omitted and failed to disclose material facts necessary in order to make the statements made, not misleading including the following:

(a)     That prior to forming Breitling, the defendant had no experience in the oil and gas industry;

(b)     That the defendant's companies never provided to the investor the actual operator's AFE cost estimates for the prospect;

(c)     That the AFE provided to investors in the CIM grossly overestimated the reasonably expected costs to drill and complete well;

(d)     That the defendant routinely falsified or significantly inflated the line items in the AFE that he had received from the operator;

(e)     That the defendant grossly inflated the cost estimates in the AFE so as to result in exorbitant excess funds for the defendant's companies;

(f)     That the defendant re-used AFEs from prior offerings, even though they were for different prospects that were in different locations;

(g)     That the defendant's companies routinely oversold the number of units in a program;

(h)     That the defendant's companies had a history of using investor funds for purposes other than represented to the investors;

(i)     That investor funds deposited in the segregated well accounts were transferred into general and operating accounts, commingled with other investor funds, including those of royalty investors and used for purposes other than the drilling and

completion of the intended well;

(j)     That investor funds earmarked for a specific well program were deposited into a segregated account for a different well program;

(k)     That investor funds earmarked for a specific well program were deposited directly into the company's general and operating accounts.

(l)     That geologist Joe Simo was not independent from Breitling, but worked under the direction and control of the defendant;

(m)    That Joseph Simo's geology reports included in the offering materials consistently overestimated potential production;

(n)     That the defendant arbitrarily inflated Simo's figures thereby overestimating the production figures provided to investors in the "Monthly Gross Income Oil and Conversion Table";

(o)     That the defendant's companies had a history of grossly overstating estimated production;

(p)     The defendant's companies failed to disclose the limited financial success experienced by previous investors; and,

(q)     That the defendant diverted a substantial amount of investor funds for his personal benefit.

18.     It was further part of the aforesaid scheme and artifice to defraud that the defendant funneled millions of dollars in proceeds from the scheme and artifice to defraud through shell companies in order to acquire personal assets and support a lavish lifestyle.

The defendant established bank accounts in the names of Grand Mesa Investments Inc., Advertising Management Inc., Range Quest Resources, Inc., and Excel Management Corporation. The defendant then caused millions of dollars of investor funds to be transferred to these accounts which were then used for chartered flights, international travel, professional concierge services, maintenance of multiple residences, and at least seven vehicles.

Counts One through Six
Securities Fraud, Aiding and Abetting
(15 U.S.C. §§ 77q(a) and 77x, 18 U.S.C. § 2)

1.      The Grand Jury hereby adopts, re-alleges, and incorporates herein by reference all allegations set forth in paragraphs one to eighteen of this superseding indictment.

2.      Beginning on or about and continuing through on or about the dates identified below for each count, in the Northern District of Texas and elsewhere, defendant, **Christopher Aundre Faulkner**, aided and abetted by other persons known to the Grand Jury, knowingly and willfully, in connection with the offer and sale of securities, to wit: fractionalized working interests in the oil-and-gas prospects identified below, by the use of transportation and communication in interstate commerce, and by the use of the mails, directly and indirectly, employed the aforesaid joint scheme and artifice to defraud, obtained money by means of untrue statements of material facts and the omission of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in transactions,

practices, and a course of business which operated as a fraud and deceit upon the investors and purchasers.

| Count | Dates | Prospect |
|---|---|---|
| 1 | September 2012 to September 2013 | Breitling – Pumpkin Ridge 2 |
| 2 | December 2012 to December 2013 | Breitling – Big Horn 2 |
| 3 | September 2013 to March 2014 | Breitling – Eagle Eye #1H |
| 4 | March 2014 to August 2014 | Crude – Red Wolf #1 |
| 5 | July 2014 to March 2015 | Crude – White Wolf #1 |
| 6 | November 2014 to June 2015 | Crude – Blue Wolf #1 |

Each in violation of 15 U.S.C. §§ 77q(a) and 77x, and 18 U.S.C. § 2.

Counts Seven through Thirteen
Mail Fraud, Aiding and Abetting
(18 U.S.C. §§ 1341 and 2)

1.      The Grand Jury hereby adopts, re-alleges, and incorporates herein by

reference all allegations set forth in paragraphs one through eighteen of this superseding

indictment.

2.      On or about the dates identified below for each count, in the Northern

District of Texas and elsewhere, defendant, **Christopher Aundre Faulkner**, aided and

abetted by other persons known to the Grand Jury, for the purpose of executing and

carrying on the aforesaid scheme and artifice to defraud, and to obtain money and

property by means of false and fraudulent pretenses, representations, and promises, and

attempting to do so, did knowingly cause to be delivered by United States mail and by

Federal Express, a commercial interstate carrier, an envelope that contained investment

funds and other items described below for the well prospect also identified below, each

such use of the mails and interstate carriers constituting a separate count of this

indictment.

| COUNT | DATE | INVESTOR | PROSPECT | ITEM MAILED |
|:---:|:---:|:---:|:---:|:---|
| 7 | 07/18/2014 | J.R. | Red Wolf | A Bank of America check issued by J.R. dated June 29, 2010, payable to Crude Energy, in the amount of $10,000.00 |

| 8 | 08/01/2014 | J.E. | White Wolf | A Wells Fargo Bank check issued by J.E., dated July 24, 2014, payable to Crude White Wolf #1, in the amount of $17,500.00 |
|---|---|---|---|---|
| 9 | 08/19/2014 | C.D. | White Wolf | Check in the amount of $35,000.00 |
| 10 | 04/02/2015 | D.L. | Blue Wolf | A letter dated April 2, 2015, addressed to D.L., Dallas, TX from Chris Faulkner |
| 11 | 05/01/2015 | C.D. | Blue Wolf | A check in the amount of $17,500.00 |
| 12 | 01/29/2015 | K.L. | Blue Wolf | A check in the amount of $40,000.00 |
| 13 | 04/07/2015 | K.L. | Blue Wolf | A check in the amount of $40,000.00 |

Each in violation of 18 U.S.C. §§ 1341 and 2.

Counts Fourteen through Nineteen
Engaging in Illegal Monetary Transactions
(18 U.S.C. §§ 1957 and 2)

1.      The Grand Jury hereby adopts, realleges, and incorporates by reference

herein, the allegations set forth in paragraphs one through eighteen and counts one through

thirteen of this superseding indictment.

2.      On or about the dates identified below for each count, in the Northern

District of Texas and elsewhere, defendant, **Christopher Aundre Faulkner,** aided and

abetted by other persons, for the purpose of executing and carrying on the aforesaid

scheme and artifice, and attempting to do so, did knowingly engage in a monetary

transaction, as more fully described below, by and through the financial institution

identified below, which was engaged in, or the activities of which affected interstate

commerce, in criminally derived property of a value greater than $10,000.00 that was

derived from a specified unlawful activity, that is securities fraud and mail fraud, in

violation of 15 U.S.C. §§ 77q(a) and 77x, and 18 U.S.C. § 1341.

| Count | Date | Financial Institution | Transaction | Amount |
|-------|------|----------------------|-------------|--------|
| 14 | 7/11/2014 | Compass Bank, Account xxxxx5683 (Grand Mesa Investments, Inc.) | Wire Transfer to eCarlink for the purchase of a 2014 McLaren automobile | $267,500 |
| 15 | 8/24/2014 | Compass Bank Account xxxx1309 (Advertising Management, Inc.) | Wire Transfer to eCarlink for the purchase of a 2014 Range Rover | $130,638.02 |
| 16 | 9/24/2014 | Compass Bank Account xxxx1309 (Advertising | Withdrawal by check made payable to Dallas Range Rover for the purchase of a | $149,824.76 |

| | | | | |
|---|---|---|---|---|
| | | Management, Inc.) | 2014 Range Rover | |
| 17 | 2/3/2015 | Compass Bank Account xxxx1309 (Advertising Management, Inc.) | Withdrawal by check made payable to eCarlink for the purchase of a 2014 Mercedes Benz S63 | $146,704.21 |
| 18 | 6/5/2015 | Chase Bank Account xxx3030 (Range Quest Resources) | Withdrawal by check made payable to eCarlink for the purchase of a 2006 Bentley Continental | $75,598.72 |
| 19 | 9/23/2015 | Compass Bank Account xxxx9224 (Advertising Management, Inc.) | Withdrawal by check made payable to eCarlink for the purchase of a 2014 Jaguar F-Type | $67,827.22 |

Each in violation of 18 U.S.C. §§ 1957 and 2.

## Count Twenty
### Attempt to Evade and Defeat Tax
### (Violation of 26 U.S.C. § 7201)

During the calendar year 2011, defendant **Christopher Aundre Faulkner**, in the Dallas Division of the Northern District of Texas, had and received taxable income in the amount of at least $325,000 that upon said taxable income there was owing to the United States of America an income tax; that well-knowing and believing the foregoing facts, the defendant, on or about June 2, 2013, in the Northern District of Texas, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar year by submitting a false income tax return on or about June 20, 2013, with the Internal Revenue Service in which he stated he had "0" income, and by concealing and attempting to conceal from all officers of the United States his true and correct income.

In violation of 26 U.S.C. § 7201.

Count Twenty-One
Attempt to Evade and Defeat Tax
(Violation of 26 U.S.C. § 7201)

During the calendar year 2013, defendant **Christopher Aundre Faulkner**, in the Dallas Division of the Northern District of Texas, had and received taxable income in the amount of at least $3,700,000 that upon said taxable income there was owing to the United States of America an income tax; that well-knowing and believing the foregoing facts, the defendant, on or about October 15, 2014, in the Northern District of Texas, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar year by failing to make an income tax return on or about October 15, 2014, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said income tax, and by concealing and attempting to conceal from all officers of the United States his true and correct income.

In violation of 26 U.S.C. § 7201.

Forfeiture Allegation
[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(1)]

Upon conviction of any of the offenses alleged in counts seven through thirteen of this superseding indictment and pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c) or 18 U.S.C. § 982(a)(2)(A), the defendant, **Christopher Aundre Faulkner**, shall forfeit to the United States of America all property constituting or derived from proceeds traceable to the respective offense and all property constituting or derived from proceeds obtained directly or indirectly as a result of the respective offense.

Upon conviction of any of the offenses alleged in counts fourteen through nineteen of this superseding indictment and pursuant to 18 U.S.C. § 982(a)(1), the defendant, shall forfeit to the United States of America all property involved in, or traceable to property involved in, the respective offense.

The above-referenced property subject to forfeiture concerning the previously-mentioned defendant includes, but is not limited to, the following:

1. Two large custom oil field paintings by Alec Monopoly;

2. 2014 Mercedes Benz AMG S63, VIN # WDDUG7JB2EA049763;

3. 2006 Bentley Continental, VIN # SCBBR53W96C037358;

4. 2012 Aston Martin Virage, VIN # SCFFDECNXCGG14069

5. 2014 Land Rover HSE, VIN # SALGS2WF6EA162015

6. The following bank accounts:

| Bank Account | Amount |
|---|---|
| Account, Plains Capital Bank, 27000011139 | $256,182.62 |
| Account, Plains Capital Bank, 2600009381 | $14,856.62 |
| Account, BBVA Compass Bank, 6729894123 | $5,000.00 |
| Account, BBVA Compass Bank, 6717336206 | $434.52 |
| Account, BBVA Compass Bank, 2714885683 | $359.37 |
| Account, BBVA Compass Bank, 6726646838 | $48.49 |
| Account, BBVA Compass Bank, 6731629224 | $2.57 |
| Account, BBVA Compass Bank, 6729092590 | $0.50 |
| Account, Bank of America, 4880-5245-6648 | $43,513.78 |
| Account, Wells Fargo Bank, 7172799160 | $122,387.11 |
| Account, BB&T, 140001706075 & 1440001706091 | $85,093.05 |
| Account, Frost Bank, 609095179 | $3,484.76 |
| Account, Citibank, 206646754 | $154.92 |

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the above-referenced property subject to forfeiture, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other

property which cannot be subdivided without difficulty, it is the intent of the United

States of America to seek forfeiture of any other property of the defendant up to the value

of the above-described property subject to forfeiture.

A TRUE BILL

FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

CHRISTOPHER STOKES
Assistant United States Attorney
Texas State Bar No. 19267600
1100 Commerce Street, Third Floor
Dallas, TX 75242-1699
Telephone: 214.659.8600
Facsimile: 214.767.4100
christopher.stokes@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

CHRISTOPHER AUNDRE FAULKNER

SUPERSEDING INDICTMENT

15 U.S.C. §§ 77q(a) and 77x, 18 U.S.C. § 2
Securities Fraud, Aiding and Abetting
(Counts 1 through 6)

18 U.S.C. §§ 1341 and 2
Mail Fraud, Aiding and Abetting
(Counts 7 through 13)

18 U.S.C. §§ 1957 and 2
Engaging in Illegal Monetary Transactions
(Counts 14 through 19)

26 U.S.C. § 7201
Attempt to Evade and Defeat Tax
(Counts 20 through 21)

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(1)
Forfeiture Allegation

21 Counts

A true bill rendered

_____

DALLAS                                                    FOREPERSON


Filed in open court this 29th day of May, 2019.

------------------------------------------------------------------------

**Defendant in Federal Custody since 26 June 2018**

------------------------------------------------------------------------

UNITED STATES ~~DISTRICT~~ JUDGE
*MAGISTRATE*
Criminal Case Pending:
3:18-CR-500-B