IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>     Plaintiff,<br><br>v.<br><br>CHRISTOPHER AUNDRE FAULKNER,<br>     Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No:  3:18-CR-00500-B |

## MOTION TO RECONSIDER AND REVOKE
## THE PRETRIAL DETENTION OF DEFENDANT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** the Defendant CHRISTOPHER AUNDRE FAULKNER, by and through undersigned counsel, Kevin B. Ross, and respectfully moves the Court to reconsider and revoke the pretrial detention of Mr. Faulkner and set his case for a hearing to set pretrial conditions of release and would show the following:

**The duration of Faulkner's pretrial detention, based on risk of flight, exceeds the limitations of the Due Process Clause of the Fifth Amendment.**

Mr. Faulkner has been detained since June 18, 2018 (18 months) and there is no fixed or estimated date for when his guilt or innocence will be determined at a trial. The delay in a trial is not attributable to Faulkner, but rests on the government.

I.   **The Timeline of the Investigation and Prosecution of the Case**

- In December 2012, the Securities and Exchange Commission ("SEC") began a civil investigation into the activities of Faulkner and his entities. Through its investigation, the SEC accumulated a significant amount of information and records.

- In July 2015, the Internal Revenue Service—Criminal Investigation ("IRS-CI") and the Federal Bureau of Investigations (FBI) initiated a criminal investigation. Much of the

1

information obtained by the SEC during its investigation was shared with the criminal investigators.

- On April 28, 2016, the IRS-CI and FBI executed search warrants and seized a substantial number of documents and electronic data from Breitling, Crude and Patriot's office located in Dallas, Texas.

- On June 24, 2016, the SEC filed a civil complaint against Faulkner and others alleging multiple violations of the Securities Act, 15 U.S.C. § 77q(a)., See, SEC v. Christopher A. Faulkner, et. Al., 3:16-cv-1735-D (N.D.-Tex).

- On August 20, 2017, the SEC filed for and obtained a TRO, an asset freeze and the appointment of a receiver over the assets of Breitling.

- On June 15, 2018, a federal criminal complaint was filed against Faulkner alleging Securities Fraud, a violation of 15 U.S.C. §77(q)(a) and 77x,; Mail Fraud (Aiding and Abetting), a violation of 18 U.S.C. §§1341 and 2;  and Money Laundering (Aiding and Abetting), a violation of 18 U.S.C. §§1957 and 2. Dkt#1.

- On June 18, 2018, Mr. Faulkner was arrested at the airport in Los Angeles, CA, appeared in the Central District of California (Western Division – Los Angeles) where he was ordered held and remanded to the Northern District of Texas, Dallas Division. Dkt#3.

- Following a detention hearing held on July 12 and 16, 2018, Mr. Faulkner was ordered detained pending trial. Dkt#15.

- On April 2, 2019, the district court rejected a plea agreement entered into by the parties. Dkt#54.

- On April 22, 2019, the district court granted Faulkner's motion to withdraw his guilty plea. Dkt#61.

- On May 29, 2019, a Superseding Indictment with Forfeiture Notice was filed. Dkt#72.

- On December 9, 2019, the district court granted motion to remove case from trial docket and set a status conference for March 26, 2020. Dkt#89.

## II.   Standard of Review

The court has an obligation to review a Defendant's pretrial detention to ensure that his due process rights are not being violated by the trial's delay. "Detention in a particular case might become excessively prolonged, and therefore punitive in relation to Congress' regulatory goal

[of preventing danger to the community].'" *United States v. Hare*, 873 F.2d 796, 800 (5th Cir. 1989) (*quoting United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)).

> Like other circuits, we find that the due-process limit on the duration of preventive detention requires assessment on a case-by-case basis, for the clause establishes no specific limit on the length of pretrial confinement. In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.

*United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989) (internal citations omitted).

Moreover, a detainee is entitled to reopen his detention hearing if he presents new and material evidence bearing on the issue whether there are conditions of release that will reasonably assure his appearance at trial. *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989). Under the Bail Reform Act, "[t]he hearing may be reopened, before or after a determination by the judicial officer, <u>at any time before trial</u> if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required." 18 U.S.C. § 3142(f)(2)(B); *see also, United States v. Stanford*, 341 Fed. Appx. 979, 984 (5th Cir. 2009). The delays that Faulkner's case has experienced (and will likely continue to experience) constitute a material change in circumstance that requires a reexamination of the detention issue in light of the newly learned information and a substantive violation of his due process rights.

### III. Argument for Granting Pretrial Release

"'[E]xcessively prolonged' detention may become so unreasonable in relation to the regulatory goals of detention that it violates due process." *United States v. Standford*, 722 F.Supp.2d 803, 806 (5th Cir. 2010)(citing *United States v. Salerno*, 481 U.S. 739, 749, 107 S.Ct. 2095 (1987); *United States v. Hare*, 873 F.2d 796, 800-01 (5th Cir. 1989)). "Due process challenges to pretrial detention must be assessed 'on a case-by-case basis.'" *Standford*, supra. at 806; citing *Hare*, 873 F.2d at 801.

**Determining Whether Due Process has been Violated:**

> In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as [1] the length of the detention that has in fact occurred or may occur in the future, [2] the non-speculative nature of future detention, [3] the complexity of the case, and [4] whether the strategy of one side or the other occasions the delay.

*Stanford*, 722 F. Supp. 2d 803, 806 (S.D. Tex.), aff'd, 394 F. App'x 72 (5th Cir. 2010)(citing *Hare*, 873 F.2d at 801). Applying the four *Hare* factors to Faulkner's case leads to the conclusion that his pretrial detention is and will be "excessively prolonged," thereby offending his rights to due process.

Initially, Faulkner was detained based on flight risk. The government argued that Faulkner was a risk of flight because he's facing a lengthy period of incarceration; he made plans to leave the United States for Lebanon; that his mother Carole Faulkner was in Lebanon; and that Faulkner had a history of disregarding the court's orders. (Dkt.20, p.6). The district court found that the history and characteristics of the defendant favored detention based on the court's belief that Faulkner was planning to flee to Lebanon with the help of his mother Carole Faulkner while seeking to amass assets in Lebanon. In addition, the district court found that when arrested, Faulkner had

4

approximately $10,000 of cash, gold, two newly purchased phones, and his birth certificate. (Dkt #20, pp7-8). The court determined that Faulkner had a history of disregarding court order based on being held in civil contempt in the SEC's civil enforcement action against him. (Dkt#20, p.8).

Most of these factors the court initially relied on are now moot. First, Faulkner has no financial means to flee the country because all his assets were seized or frozen. Second, his mother, Carole Faulkner, is living in Tarrant County, Texas; not in Lebanon. Moreover, his wife and family live in California. Thus, Faulkner's family ties are in Texas and California. Being incarcerated for over 18 months and having his assets seized, Faulkner no longer has the means to flee the country. Regarding the non-negotiated cashier's checks, the basis for the government's theory that he was trying to amass assets in Lebanon, such is also moot because the SEC receiver in the civil case was able to have the issuing bank stop payment on the cashier's checks.

Yet, most importantly is the argument below regarding the factors the court should consider in determining whether Faulkner's due process rights are being violated by his prolonged pretrial detention.

1. *Length of Detention*

Faulkner has been held in pretrial detention for over 18 months. Though the length of detention is not itself dispositive, it is a starting point in the Court's analysis. *United States v. Salerno*, 481 U.S. 739, 748 n.4, 107 S.Ct 2095 (1987). The Court looks at "the length of detention that has in fact occurred or may occur in the future." *Stanford*, 722 F. Supp. 2d 803, 806 (S.D. Tex.), aff'd, 394 F. App'x 72 (5th Cir. 2010)(citing *Hare*, 873 F.2d at 801). In *United States v. Zannino*, 798 F.2d 544 (1st Cir. 1986) the court stated, "[e]ven so, we shall assume that in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial detention." The court in *Standford* found, "[a]bsent any prosecutorial delay or extended

speculative detention, which the court discusses below, the length of Standford's pretrial detention [twelve months] to this point does not offend due process." *Id*. at 809 (citations omitted).  This is where Faulkner's facts are distinguishable from the *Standford* case because the reason for prolonged detention here is prosecutorial delay, and the length of Faulkner's continued future detention is uncertain.

### 2. *Non-Speculative Nature of Future Detention*

The district court next looks at the nature of any future detention and whether it is speculative. *Hare*, 873 F.2d at 801.  In *Standford*, the length of any future delay was not speculative, but rather fixed because Standford had a fixed trial date. *Id.*[1] at 809.  Again, Faulkner's case is distinguishable from *Standford* because the district court removed Faulkner's case from the trial docket because the government, in the 16 months he has been detained, had not yet produced discovery.  Though the motion to take Faulkner's case off the trial docket was a joint request, it was a necessity because the government had not prepared or produced any of the 84 terabytes of discovery to Faulkner.  Noteworthy is the fact that the government has had the discovery in its possession since the execution of the search warrant in April of 2016.

Moreover, given the voluminous amount of discovery in this case, it is reasonable to believe that discovery production alone could take at least six more months, if not longer.  It is also reasonable to presume that it will take the Faulkner defense team at least one year to properly organize the discovery produced, review it, analyze it and prepare the case for trial.  Accordingly, it is extremely speculative as to when Faulkner's case could be ready for trial.

In *United States v. Gonzales Claudio*, the court stated:

---

[1] In *Stanford*, by the time of the upcoming trial date, Standford would have been detained nineteen months. Here, Faulkner has already been detained over eighteen months, as opposed to the twelve months Stanford had been detained when he filed his motion for release, and there is no certain trial date because the government has yet to even provide full discovery.

> In this case, the appellants had been confined for fourteen months when this appeal was heard. Their trial is now scheduled for March 3, 1987, eighteen months after detention began, and is estimated by the Government to last eight months. If the trial date is not postponed and the estimated trial length is not low, these appellants will remain in pretrial detention for two years and two months before the charges against them are determined by a jury. Detention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process. *See United States v. Zannino,* 798 F.2d 544, 548 (1st Cir.1986) (court assumes "that in many, perhaps most, cases sixteen months would be found to exceed the due process limitation on pretrial confinement").

*Gonzales Claudio*, 806 F.2d 334, 341 (2d Cir. 1986).

This factor weighs in favor of finding a violation of Faulkner's rights due process given the extreme speculative nature of his pretrial detention.

### 3. *Complexity of the Case*

Third, the Court looks at the complexity of the case. This case has been designated complex due to the nature of the prosecution, the complexity of the facts underlying the indictment, and the voluminous nature of the discovery. (Dkt. #81). The case involves the sale of working interests in various oil and gas properties to over a thousand investors between 2010 and 2016. Over $149 million of investor funds flowed through approximately one hundred bank accounts associated with the defendant or his companies. The investigative materials obtained by the government are extensive. Agents imaged 90 electronic devices during search of the defendant's office that contain approximately 86 terabytes of data. The government obtained additional records from the Securities and Exchange Commission, which total over 600 gigabytes. Additional records obtained by subpoenas, voluntary disclosures, and other investigative methods exceed 25 gigabytes.

In *Standford*, the district court found that Standford, having agreed to a continuance which lengthened the pretrial period, weighed against his due process claim. *Id*. at 810. Faulkner is distinguishable from *Standford* because in *Standford* the government had produced discovery to

7

the defense team and Standford had been able to review the evidence and prepare his case. Faulkner, on the other hand, has not had the opportunity to review the discovery in his case because the government failed to prepare it for production or produce it for 16 months of his pretrial detention. It is only in the last two months that *an extremely small portion* of discovery has been produced by the government. As such, that Faulkner joined the request to remove his case from the trial docket should not be weighed against him and the complexity of the case weighs in favor of a finding that his pretrial detention has become excessive.

### 4. *Source of any Delay*

Fourth, the district court looks at the source of delay in reaching trial. *Hare*, 873 F.2d 801. "Any delay occasioned by prosecutorial strategy may be a basis upon which an exceedingly lengthy pretrial detention offends due process." *Standford*, at 810; citing *United States v. Millan*, 4 F.3d 1038 at 1044-45 (2d Cir. 1993); *United States v. Ojeda Rios*, 846 F.2d 167, at 168-69 (2d 1988). The district court in *Standford* found that nothing the government did was "responsible for any delay in trial or any extension of Standford's pretrial detention." *Id*. at 811. Faulkner's case is yet again distinguishable from *Standford* because the delay in trial, removal from the trial docket, and the extension of Faulkner's detention is because the government has failed to timely produce discovery to allow Faulkner to prepare his defense. The government's failure to produce discovery for over 16 months is not the fault of Faulkner, yet Faulkner's pretrial detention is exacerbated by significant prosecutorial delay. *See United States v. Chen*, 820 F.Supp. 1205, 1210 (N.D. Cal 1992). Faulkner is not the source of delay in his case.

The government's failure to timely produce discovery weighs heavily in favor of finding that Faulkner's rights to due process have been violated and such violation continues everyday he sits detained with no end in sight. *United States v. Gonzales Claudio*, 806 F.2d 334, 342 (2d 1986)

(defendants facing potential pretrial detention of 22 months and the court noted that prosecutorial delay – including the government's delay in disclosing the existence of certain evidence – was "significant enough to add considerable weight to the defendant's claim that the duration of detention had exceeded constitutional limits.") The government has had the discovery in its possession since the execution of the search warrant in April 2016, but has not timely produced it to the defense. *See Gonzales Claudio*, 806 F.2d at 342 (noting the government's responsibility in delay).[2]

### Fundamental Fairness, the Due Process Clause
### And an Individual's Deprivation of Liberty

> [We] recognize that the release of these defendants upon reasonable conditions creates a risk that they may flee. We are not indifferent to that prospect. But the enforcement of all constitutional restraints upon government in its efforts to administer the criminal law entails risks. Occasionally such enforcement creates the risk that a person convicted of crime may escape punishment. In this case the enforcement of due process limits upon the duration of preventive detention creates the risk that a person accused of crime may avoid a trial that might result in conviction and punishment. That risk is serious, but of at least equal gravity is the preventive detention for fourteen months of defendants who are presumed innocent and whose trial to determine guilt or innocence will not even begin until detention has lasted eighteen months. In mandating fundamental fairness, the Due Process Clause endeavors to set outer limits at which risks to society must be accepted to avoid unconscionable deprivations of the liberty of individuals.

*United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2d Cir. 1986).

---

[2] "Examining the Government's share of responsibility for the pretrial delay, we note the following undisputed circumstances. The wiretapping was conducted over a two-year period from September 1983 until defendants' arrest on August 30, 1985. The Government began providing the defendants certified translations of audiotapes in December 1985, and the translation task was not completed until May 1986, nine months after the defendants were arrested and incarcerated. The translation of the seized documents, a task that could have begun at the time of the seizures on August 30, 1985, had not been completed within one year after detention began and has only recently been accomplished. The *existence* of the videotapes was not disclosed to the defendants until June 1986, ten months after detention began. Obviously some interval of time is required for the defendants and their counsel to examine these materials, both for trial preparation and for making challenges to the admissibility of such materials."

United States v. Gonzales Claudio, 806 F.2d 334, 341–42 (2d Cir. 1986)

IV. **Combination of Conditions can Reasonably Assure Faulkner's Appearance for Court Proceedings**

There is a combination of conditions that can reasonably assure Faulkner's appearance for court proceedings. Among the standard conditions of pretrial release, the court could also order:

1. Home confinement w/GPS monitoring;
    a. Exceptions: medical appointments; attorney meetings; court proceedings; church or religious services.
2. Surrender passport to District Clerk's Office;[3]
3. Weekly check-ins with a pretrial services officer.

V. **Conclusion**

Accordingly, for the above reasons, Faulkner respectfully requests the Court to reconsider and revoke the pretrial detention order entered August 2, 2018, (Dkt#20) and hold a hearing setting conditions of pretrial release.

Respectfully submitted,

/s/ Kevin B. Ross

KEVIN B. ROSS
State Bar of Texas Card No. 24033020

LAW OFFICE OF KEVIN B. ROSS, P.C.
8150 N. Central Expy.
Suite M2070
Dallas, Texas 75206
(214) 731-3151
Fax 214-594-8988

Attorney for Christopher A. Faulkner

---

[3] Counsel was given Mr. Faulkner's passport to hold pending the case. Counsel could surrender Faulkner's passport on Faulkner's behalf.

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on the 17th day of November 2019, I conferred with AUSA Christopher Stokes attorney for the Government, and he stated that the Government is **OPPOSED** to the granting of this motion.

/s/ Kevin B. Ross
KEVIN B. ROSS


## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing Motion to Reconsider and Revoke the Pretrial Detention of Defendant was served by electronic transmission to Christopher Stokes, Assistant United States Attorney, via ECF on this the 2nd day of January 2020.

/s/ Kevin B. Ross
KEVIN B. ROSS