IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 3:18-MJ-407-BT |
| VS. | § | |
| | § | |
| CHRISTOPHER A. FAULKNER, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Christopher A. Faulkner ("Faulkner") moves pursuant to 18 U.S.C.

§ 3145(b) to revoke the magistrate judge's order directing that he be detained pending trial.

Plaintiff United States of America (the "government") opposes the motion. Following *de*

*novo* review of the evidence presented at the detention hearing conducted by the magistrate

judge,[1] and for the reasons that follow, the court denies Faulkner's motion and orders that

he be detained pending trial.

I

Faulkner is charged in a criminal complaint with committing securities fraud, in

violation of 15 U.S.C. §§ 77q(a) and 77x; mail fraud, in violation of 18 U.S.C. § 1341; and

---

[1]"In reviewing a magistrate judge's order of pretrial release, the district court acts *de novo* and makes an independent determination of whether release is proper." *United States v. Arias*, 119 F.3d 2, 1997 WL 367860, at \*2 (5th Cir. June 12, 1997) (unpublished table decision) (citing *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992); 18 U.S.C. § 3145(a)(1)). The court's review of the record developed before the magistrate judge is an appropriate procedure to comply with that obligation. *See, e.g., United States v. Farguson*, 721 F. Supp 128, 129 n.1 (N.D. Tex. 1989) (Fitzwater, J.).

engaging in illegal monetary transactions, in violation of 18 U.S.C. § 1957.  The government alleges that these charges stem from a seven-year fraudulent oil and gas investment scheme in which Faulkner purported to sell working interests to investors.  Faulkner allegedly underpaid these investors' returns and obtained these funds for his own use.  The complaint was filed on June 15, 2018, and Faulkner was arrested three days later, on June 18.  Faulkner has not yet been indicted, and he is not yet set for trial.[2]

Following his arrest, Faulkner appeared before a magistrate judge on July 12 and 16, 2018 for a detention hearing.[3]  The government presented three witnesses: Brandon Scott ("Special Agent Scott"), who is a Special Agent with the U.S. Department of Homeland Security Federal Protective Service and a Task Force Officer with the Federal Bureau of Investigation ("FBI") Joint Terrorism Task Force; James Roberts Bridges ("Special Agent Bridges"), a Special Agent with the FBI; and Ronald Leazer III ("Special Agent Leazer"), a Special Agent with the Internal Revenue Service Criminal Investigation Division. Together, they testified about the circumstances surrounding Faulkner's arrest.

Special Agent Scott testified that an FBI Confidential Human Source ("CHS") was contacted by an individual the CHS knows as "Bennie" in Beirut, Lebanon.  According to

---

[2]The undersigned is hearing this matter as the duty judge.  If Faulkner is indicted by the grand jury, his case will be randomly assigned to a district judge.

[3]The hearing commenced on July 12, 2018.  At the conclusion of the government's case, Faulkner requested a continuance of the hearing so that his witness would be available to testify.  The magistrate judge granted the request and completed the hearing on July 16, 2018.

Agent Scott's testimony, Bennie informed the CHS in October 2017 that Faulkner—a friend of Bennie's—needed help fleeing the United States to avoid legal trouble. Bennie informed the CHS that he was working with Carole Faulkner ("Carole"), Faulkner's mother and former attorney, to find living arrangements for Faulkner in Lebanon.[4] Carole traveled to Lebanon in April 2018. Shortly thereafter, Carole's house in Colleyville, Texas was listed for sale, and Bennie later asked the CHS if he was interested in buying Carole's house. Carole has failed to board two return flights to the United States, and is believed to still be in Lebanon.

Special Agent Leazer and Special Agent Bridges testified that, on May 2, 2018, the government met with Faulkner's current counsel for a reverse proffer to preview the government's case against Faulkner and the applicable sentencing guidelines. The government explained that, under the guidelines, Faulkner could face a life sentence. Faulkner was vacationing in Mexico and not present at this meeting. He returned to the United States three days later. On May 16, Bennie sent the CHS a message on WhatsApp—an encrypted messaging application—asking if there were any arrest warrants or flight risk alerts on Faulkner. He included in his message a picture of Faulkner's current passport.

---

[4]Carole is alleged to have conspired with Faulkner in his illicit financial dealings. For example, in an SEC civil enforcement action against Faulkner, this court held Carole and Faulkner in civil contempt for their failure to turn over receivership assets. *See SEC v. Faulkner*, 2018 WL 888910, at *12 (N.D. Tex. Feb. 13, 2018) (Fitzwater, J.). Carole and Faulkner both repeatedly asserted their Fifth Amendment rights against self-incrimination during the contempt hearing.

The government gave Faulkner a plea offer—which included a term of imprisonment—on June 4. Faulkner's deadline to respond was eventually extended to June 22. On June 14, however, the government discovered that Faulkner had booked a round trip ticket to London, departing June 18. The next day, the government filed a criminal complaint and obtained an arrest warrant. Faulkner was arrested at the Los Angeles International Airport as he attempted to board his flight to London. When arrested, Faulkner was carrying 10 one-once gold bars, gold coins, $10,726.00 in cash, two brand-new cell phones, and his birth certificate.

Faulkner presented a private investigator as his own witness at the detention hearing. The private investigator testified that Faulkner was leaving for a business meeting in London when he was arrested, and intended to return to the United States, as demonstrated by the return ticket that he had purchased. The private investigator further testified that he believed that Faulkner did not present a flight risk. He pointed to the facts that Faulkner was in Mexico when he learned of the government's charges, yet chose to return to the United States; that Faulkner was traveling with light luggage when arrested; and that Faulkner had filed a complaint with the Department of Homeland Security to resolve being recurrently screened when he returned to the United States from international travel.

Following the detention hearing, the magistrate judge ordered Faulkner detained, finding by a preponderance of evidence that no condition or combination of conditions would reasonably assure Faulkner's appearance as required. The magistrate judge noted,

- 4 -

*inter alia*, on the order of detention pending trial that the lengthy period of incarceration that Faulkner faced if convicted and Faulkner's significant family or other ties outside the United States supported this finding. Faulkner now moves to revoke the detention order under 18 U.S.C. § 3145(b) and to be released on conditions while awaiting trial.

## II

An individual shall be released pending trial unless a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Because the court is ordering Faulkner detained on the basis that he is a flight risk, it need not decide whether he presents a risk to the safety of any other persons and the community. *See United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) ("[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient [to detain a defendant without bond]; both are not required."). The court applies a preponderance of the evidence standard when determining whether Faulkner is a flight risk. *See id* at 250.[5] "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," a court must consider:

---

[5]The court applies a clear and convincing evidence standard when determining that no condition or combination of conditions will reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(f)(2) ("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.").

> (1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### III

Faulkner maintains that the government's evidence that he is a flight risk relies on "faulty assumptions and uncorroborated hearsay statements." D. Mot. 3. He contends that his own evidence, including the fact that he returned from Mexico despite knowing that the government intended to charge him with a crime, demonstrates that he would comply with any combination of conditions the court deems appropriate to assure his appearance at future proceedings. The government responds that the magistrate judge correctly determined that Faulkner presents a flight risk, emphasizing that Faulkner is facing a lengthy period of incarceration; that he made plans to leave the United States for Lebanon; that his mother, Carole, remains in Lebanon; and that Faulkner has a history of disregarding this court's orders.

Following a *de novo* review of the evidence presented at the detention hearing, the court finds that the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Faulkner's appearance as required. The totality of the § 3142(g) factors demonstrate that Faulkner is a flight risk.

Regarding the nature and circumstances of the offense charged, Faulkner is accused

- 6 -

of multiple financial crimes that, as a result of the amount of money allegedly defrauded, could result in a life sentence. Regarding the weight of the evidence, the government's agents testified in detail about the alleged scheme that Faulkner operated. No party has maintained that the fourth factor—"the nature and seriousness of the danger to any person or the community that would be posed by the person's release"—is applicable to Faulkner.

In this case the third factor—the history and characteristics of the defendant—overwhelmingly favors detention. Based on the evidence developed at the hearing, it is reasonable to draw the inference that Faulkner had been making plans to flee to Lebanon. Given Carole and Faulkner's history of working together in various schemes, the court finds credible the government's evidence that Carole has been conspiring with Faulkner to amass assets in Lebanon. With Carole in Lebanon, Faulkner has significant family ties outside the United States. Moreover, as the magistrate judge noted, Faulkner has few permanent ties to the United States—he has no personal bank accounts in his name, no residential lease or property in his name, and owns little property that has not yet been seized or liquidated.

The evidence also strongly suggests that Faulkner was arrested while attempting to flee. As established above, Faulkner is facing a lengthy prison term if convicted. The timing of the government's reverse proffer, Bennie's request regarding any arrest warrants or flight risk warnings pertaining to Faulkner, and Faulkner's subsequent purchase of a plane ticket to London is therefore remarkably suspect. Beyond this, Faulkner was arrested in possession

of a substantial amount of cash, gold, two newly-purchased phones, and his birth certificate. When considered together, the evidence indicates that Faulkner was arrested while attempting to act on his preparations to flee the country.

Faulkner's argument that his return from Mexico demonstrates that he is not a flight risk is unavailing. The government presented credible evidence that Faulkner and Carole had prepared to avoid prosecution by fleeing to Lebanon well before Faulkner took his vacation in Mexico. The decision to return to the United States before ultimately fleeing to Lebanon is consistent with such preparations.

Finally, Faulkner has a well-established record of disregarding court orders. In the SEC's civil enforcement action against him, Faulkner has been held in civil contempt for attempting to redirect and withhold receivership assets, despite a court order directing that the assets be frozen and turned over to the Receiver. *See SEC v. Faulkner*, 2018 WL 888910, at *14 (N.D. Tex. Feb. 13, 2018) (Fitzwater, J.). The court also held Carole in civil contempt for knowingly aiding and abetting Faulkner. *Id.* at *16. Similarly, in a different civil case, Faulkner was sanctioned for altering digital discovery records to conceal the existence of a particular computer from the opposing party. *See T & E Inv. Grp. LLC v. Faulkner*, 2014 WL 550596, at *5-6 (N.D. Tex. Feb. 12, 2014) (Solis, J.). Faulkner offers no evidence to assure the court that his attitude toward court orders would improve were the court to release him subject to conditions. And based on the court's experience in the civil enforcement action, it is highly doubtful that his attitude would improve.

- 8 -

Accordingly, the court holds that the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Faulkner's appearance as required.

IV

For the reasons explained, Faulkner's July 30, 2018 motion to revoke the magistrate judge's detention order is denied. The court orders that Faulkner be held without bond pending trial as follows. He is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. He is to be afforded reasonable opportunity for private consultation with his counsel. By order of this court, to be issued in the future, the person in charge of the corrections facility in which Faulkner is confined is to deliver him to a United States Marshal for the purpose of appearing in connection with any court proceeding.

**SO ORDERED**.

August 2, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 9 -