IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

CHRISTOPHER AUNDRE FAULKNER

NO.  3:18-CR-500-B

## FACTUAL RESUME

In support of Christopher Aundre Faulkner's plea of guilty to the offenses in the

superseding indictment, Faulkner, the defendant, Kevin B. Ross, the defendant's attorney,

and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Counts One and Two of the superseding

indictment, charging violations of 15 U.S.C. §§ 77q(a) and 77x, and 18 U.S.C. § 2, that

is, securities fraud and aiding and abetting, the government must prove each of the

following elements beyond a reasonable doubt:[1]

> *First.*     That in the offering or sale of the securities described in the
> superseding indictment, that is fractional undivided interests in oil
> and gas rights, the defendant did any one or more of the following:
>
> > (1) employed a device, scheme or artifice to defraud, or
> >
> > (2) obtained money or property by means of untrue statements of
> > material facts or failure to state material facts that made what was
> > said, under the circumstances, misleading, or
> >
> > (3) engaged in an act, practice or course of business that operated, or

---

[1] Modern Federal Jury Instructions (Criminal), ¶57, Vol. 3, Sand, Siffert, Laughlin & Reiss (1998).

would operate, as a fraud or deceit upon a purchaser;

*Second.*  That the defendant acted knowingly, willfully and with the intent to defraud; and

*Third.*  That the defendant used, or caused to be used, the mails, or any means or instruments of transportation or communication in interstate commerce, in furtherance of the scheme.

The elements of aiding and abetting, a violation of 18 U.S.C. § 2, are as follows:[2]

*First.*  That the offense of securities fraud was committed by some person;

*Second.*  That the defendant associated with the criminal venture;

*Third.*  That the defendant purposefully participated in the criminal venture; and,

*Fourth.*  That the defendant sought by action to make that venture successful.

To prove the offense alleged in Count Twenty-One of the superseding indictment,

charging a violation of 26 U.S.C. § 7201, that is, tax evasion, the government must prove

each of the following elements beyond a reasonable doubt:[3]

*First.*  That there exists a substantial tax deficiency owed by the defendant to the Internal Revenue Service, as charged;

*Second.*  That the defendant committed at least one affirmative act to evade or defeat assessment or payment of the income taxes owed. An affirmative act includes any conduct the likely effect of which would be to mislead or conceal; and

*Third.*  That the defendant acted willfully, that is, the law imposed a duty on the defendant, the defendant knew of that duty, and the defendant voluntarily and intentionally violated that duty.

---

[2] Fifth Circuit Pattern Jury Instruction 2.04 (5th Cir. 2019).
[3] Fifth Circuit Pattern Jury Instruction 2.103 (5th Cir. 2019).

## STIPULATED FACTS

1.      The defendant admits and agrees that beginning by at least September

2012, and continuing through on or about September 2013, in the Northern District of

Texas, aided and abetted by other persons, he knowingly and willfully, and with intent to

defraud, in connection with the offer and sale of securities, that is, fractionalized working

interests in the Breitling – Pumpkin Ridge 2 oil and gas program, did by the use of

transportation and communication in interstate commerce, and by the use of the mails,

directly and indirectly, (a) employed a scheme and artifice to defraud, (b) obtained

money by means of untrue statements of material facts and the omission of material facts

necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading, and (c) engaged in transactions, practices, and a

course of business which operated as a fraud and deceit upon the investors and purchasers

in violation of 15 U.S.C. §§ 77q(a) and 77x, and 18 U.S.C. § 2.

2.      The defendant further admits and agrees that beginning by at least

December 2012, and continuing through on or about December 2013, in the Northern

District of Texas, aided and abetted by other persons, he knowingly and willfully, and

with intent to defraud, in connection with the offer and sale of securities, that is :

fractionalized working interests in the Breitling – Big Horn 2  oil and gas program, did by

the use of transportation and communication in interstate commerce, and by the use of

the mails,  directly and indirectly, (a) employed a scheme and artifice to defraud, (b)

obtained money by means of untrue statements of material facts and the omission of

material facts necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading, and (c) engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the investors and purchasers in violation of 15 U.S.C. §§ 77q(a) and 77x, and 18 U.S.C. § 2.

      3.     The defendant further admits and agrees that during the calendar year 2013, in the Dallas Division of the Northern District of Texas, he had and received taxable income in the amount of at least $3,700,000 that upon said taxable income there was owing to the United States of America an income tax; that well-knowing and believing the foregoing facts, on or about October 15, 2014, in the Northern District of Texas, he did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar year by failing to make an income tax return on or about October 15, 2014, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said income tax, and by concealing and attempting to conceal from all officers of the United States his true and correct income in violation of 26 U.S.C. § 7201.

      4.     During the period 2010 through 2016, the defendant established and controlled several oil and gas companies through which working and royalty interests in oil and gas prospects were sold to investors throughout the United States. In connection with the sale of these investments, the defendant willfully, and with intent to defraud, deceived investors by misrepresenting material facts, and failing to disclose material facts as to the nature of the investments and the use of the investors' funds. The defendant's companies raised over $70 million from investors for working interest programs alone,

Factual Resume—Page 4

and millions more for royalty interest programs. The companies' books and records revealed the defendant diverted approximately $23 million in commingled royalty and working investor funds to his own personal benefit.

5.    In September 2009, the defendant formed and jointly owned Breitling Oil and Gas Corporation, ("Breitling") with two other individuals, P.H. and M.M. The defendant was the President and CEO of the Breitling and controlled and directed the activities and finances of the company. Breitling conducted business in the Northern District of Texas. From in or about September 2012 through December 2013, Breitling sold to investors working interests in 15 oil and gas prospects in Texas, Oklahoma, and North Dakota.

6.    In 2013, the defendant transitioned Breitling into a public company through a reverse merger with an existing public company. The reverse merger created Breitling Energy Corporation ("BEC") with the defendant as the chairman of the board.

7.    Breitling, Crude, and Patriot (successor companies of Brietling), offered and sold to investors a "unit" of the working interest in a proposed well. These units consisted of undivided fractional interests in oil and gas rights and were securities, as that term is defined under the securities laws of the United States.

8.    The price for each unit was based on a proportional share of the estimated costs to drill and complete the well. The units were offered on what was described as a "turnkey" basis. Under this turnkey arrangement the investor's investment was fixed, meaning that should the actual costs of drilling the well exceed the estimated costs, then the company would be responsible for the overage, not the investor. Alternatively, if the

cost of drilling and completion was below what was estimated and raised from the investors, then the company could retain these excess funds.

9.      The estimated costs to drill and complete the well was provided to the investors in the form an itemized list of the expected costs known as an Authority for Expenditure ("AFE"). AFEs were included in the offering materials provided to the investors.

10.     The defendant was generally responsible for the preparation of the offering documents and was aware of their contents and distribution. The offering materials consisted of a color marketing brochure that described the prospective well, a Confidential Information Memorandum ("CIM") that described the terms of the offering, and a Subscription agreement. The offering documents were delivered to prospective investors through means of interstate commerce, including United States mail and by interstate commercial carrier. If a prospective investor agreed to purchase the unit the investor would return the subscription agreement and a check to the defendant's company by an interstate commerce carrier or mail. Investors would also transmit payment by wire transfer to the defendant's companies' bank accounts located in Dallas, Texas.

11.     The offering materials also represented that investor funds would be deposited into a segregated bank account and that all costs for the drilling and completion of the well would be paid from that account.

12.     The color brochure described the prospect and provided a Geology Report prepared by Joe Simo of Simo Energy LLC, who was represented to be an independent

geologist.  Simo often provided in his Geology Report an estimate of the future production from the well.

13.     The defendant agrees and stipulates that beginning by at least September 2012 and continuing through at least December 2013, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant, knowingly, and with intent to defraud, aided and abetted by others, knowingly made and caused to be made materially false and fraudulent representations, and omitted material facts which a reasonably prudent investor would find material regarding the working interest programs offered and sold by Breitling, Crude, and Patriot.

14.     In furtherance of the scheme and artifice to defraud, the defendant caused the offering materials to contain an AFE with materially inflated estimates of the costs to drill and complete the wells.  This material inflation resulted in the defendant raising an excess amount of investor funds which became a direct profit to the defendant's companies since there was no reasonable likelihood that the actual costs would reach the inflated estimates and money raised from the investors.

15.     Investors were also provided a Geology Report in the offering materials. These reports appeared to be prepared by an independent geologist and contained an estimate of the future production from the well.  In fact, the geologist worked with the defendant and the estimated potential production was consistently overstated to investors.

16.     The offering materials informed the investors that only a specific number of working interest units in each well prospect would be offered and sold.  In fact, the

defendant's companies routinely sold more units to investors than specified in the offering.

17.     The offering materials further represented to investors that their funds would be deposited into a segregated bank account and that all costs for the drilling and completion of the well would be paid from that account. The remaining funds were then supposed to be transferred into general and operating accounts after the wells were drilled and paid for.  In fact, the investor funds were often transferred into general and operating accounts, commingled with other investor funds including those of royalty investors, and frequently used for purposes other than the drilling and completion of the intended wells.

18.     As a part of the ongoing scheme to defraud from September 2012 to September 2013, the defendant, by the use of transportation and communication in interstate commerce, and by the use of the mails, caused to be offered and sold to investors units in the Breitling – Pumpkin Ridge 2 program which was to drill and complete two wells in Mountrail and Williams County, North Dakota.  According to the offering materials Breitling intended to raise $4,100,000 by selling 5 percent of the working interest in the wells in the form of 10 units, each representing a .5% working interest for a price of $410,000 each.  From September 2012 through September 2013, Breitling raised approximately $7.1 million from investors for the Pumpkin Ridge 2 program.  The marketing materials prepared by the defendant and distributed to investors contained an AFE with estimated costs to drill the wells totaling $41,579,824.  In fact, the actual estimated costs as set out by the operator's AFE was $7,853,240.  As in other programs the investor funds deposited into the Pumpkin Ridge 2 segregated account were

transferred into general and operating accounts, commingled with other investor funds, and used for purposes other than the drilling and completion of the Pumpkin Ridge 2 wells.

19.     Also as part of the ongoing scheme to defraud from December 2012 to December 2013, the defendant caused to be offered and sold to investors units in the Breitling – Big Horn 2 program which was to drill and complete two wells also in Mountrail and Williams County, North Dakota.   According to the offering materials Breitling intended to raise $4,100,000 by selling 5 percent of the working interest in the wells in the form of 10 units, each representing a .5% working interest for a price of $410,000 each.  From December 2012 through December 2013, Breitling raised approximately $5.5 million from investors for the Big Horn 2 program.  The marketing materials prepared by the defendant and distributed to investors contained an AFE that was the same as used for the previous Pumpkin Ridge 2 program.  The AFE represented the estimated costs to drill the wells totaling $41,579,824  In fact, the actual estimated costs as set out by the operator of the well was $17,425,905.  As in other programs the investor funds deposited into the Big Horn 2 segregated account were transferred into general and operating accounts, commingled with other investor funds, and used for purposes other than the drilling and completion of the intended wells.

20.     During the operation of his companies from at least September 2012 to at least December 2013, the defendant obtained proceeds of the scheme to defraud by causing his companies to transfer millions of investor funds to bank accounts the defendant had established in the name of nominee companies which had no legitimate

business function. During the calendar year of 2013, the defendant received taxable income of at least $3,700,000 in the form of transfers from Breitling accounts to the nominee accounts, including Grand Mesa Investments Inc., Advertising Management Inc., Range Quest Resources, Inc., and Excel Management Corporation, that he used for the acquisition of personal assets, investments, and personal expenses, such as chartered flights, international travel, professional concierge services, maintenance of multiple residences, and at least seven luxury vehicles. These funds constituted taxable income to the defendant which he failed to report to the Internal Revenue Service. The defendant knowingly and willingly attempted to evade substantial income tax due on this income by intentionally failing to file an income tax return with the Internal Revenue Service, and by further concealing the income by means of funneling the income through the nominee companies while maintaining no bank accounts in his own name and by titling the assets, such as his residence and the vehicles, in the names of the business nominees.

21.    The defendant agrees that the defendant committed all the essential elements of the offenses. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Counts 1, 2, and 21 of the superseding indictment.

AGREED TO AND STIPULATED on this _2_ day of _November_, 2020.

ERIN NEALY COX
UNITED STATES ATTORNEY

Christopher Aundre Faulkner
Defendant

Marcus Busch
Assistant United States Attorney
Texas State Bar No. 03493300
1100 Commerce, Third Floor
Dallas, Texas 75242
Tel:  214.659.8600
Fax:  214.659.8812
Email:  marcus.busch@usdoj.gov

Kevin B. Ross
Attorney for Defendant

Factual Resume—Page 11